David **DELLINGER** et al., Appellants,

v.

John N. **MITCHELL**, Attorney General of
the United States, et al.

No. 23931.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 9, 1970.

Decided Feb. 16, 1971.

Mr. Herman Schwarz, Buffalo, N. Y., of the bar of the United States District Court for the District of Columbia, pro hac vice, by special leave of Court, with whom Messrs. Melvin L. Wulf, William M. Kunstler, New York City, and Lawrence Speiser, Washington, D. C., were on the brief, for appellants.

Mr. George W. Calhoun, Atty., Department of Justice, for appellees. Asst. Atty. Gen. J. Walter Yeagley at the time the brief was filed and Mr. Robert L. Keuch, Atty., Department of Justice, were on the brief, for appellees. Mrs. Lee B. Anderson and Mr. Kevin T. Maroney, Attys., Department of Justice, also entered appearances for appellees.

Before McGOWAN and LEVENTHAL, Circuit Judges, and GORDON,* U.S. District Judge for the Eastern District of Wisconsin.

LEVENTHAL, Circuit Judge:

Plaintiffs appeal from an order staying all proceedings in this civil action until ten days after final termination of a related criminal case. We are of the view that the stay order as issued exceeded the proper exercise of authority of the District Court and remand for further proceedings.

## I. *The Facts*

The plaintiffs in this case are eight individuals [1] and nine organizations.[2] The individuals were defendants on trial in United States v. Dellinger et al., Criminal No. 69–180 (N.D.Ill.), the "Chicago Trial" that attracted nationwide attention and which is hereinafter referred to as "the criminal case." During the pre-trial proceedings in the criminal case defendants moved for disclosure of any electronic surveillances involving them. The Government filed an answer which admitted that certain of the defendants had been overheard

---

* Sitting by designation pursuant to 28 U.S. C. § 292(c) (1964).

1. They are: David Dellinger, Rennard Davis, Thomas Hayden, Jerry Rubin, Abbott Hoffman, Bobby Seale, John Froines, and Lee Weiner.

2. They are: The Black Panther Party for Self-Defense, Student Non-Violent Coordinating Committee, Congress of Racial Equality, The Southern Conference Educational Fund, American Servicemen's Union, National Mobilization Committee To End the War in Vietnam, New York Resistance, Catholic Peace Fellowship and War Resisters League.

during the course of electronic surveillance. No warrant or judicial order had been obtained for such surveillance. The Government answer asserted that the electronic surveillance was lawful even in the absence of judicial authorization since the President, acting through the Attorney General, has constitutional power as the Chief Executive to utilize electronic surveillance to gather intelligence information deemed vital to the national security, and specifically to gather intelligence information concerning domestic organizations which seek to attack and subvert the government by unlawful means, free from any judicial supervision or statutory limitation.

On June 26, 1969, the plaintiffs filed this action against the Attorney General and the Director of the Federal Bureau of Investigation for damages and for declaratory, injunctive and other appropriate relief. Plaintiffs sought a declaration that the surveillance policies announced by the Attorney General were invalid, and an injunction prohibiting electronic surveillance of the plaintiffs and the class they represent [3] and any further implementation of the policies announced by the Attorney General. On information and belief derived from the Government memorandum and affidavit in the criminal case and from sworn testimony by F.B.I. agents in United States v. Clay, Crim.No. 67–H–94 (S.D.Tex.) aff'd 430 F.2d 165 (5th Cir. 1970), cert. granted, 400 U.S. 990, 91 S.Ct. 457, 27 L.Ed.2d 438 (Jan. 11, 1971), admitting electronic surveillance of the late Martin Luther King, Jr. and of Elijah Muhammad, plaintiffs alleged that they had been and were being subjected to unlawful electronic surveillance.[4]

Plaintiffs alleged that such electronic surveillance of them and others similarly situated has impaired and will continue to seriously impair their lawful and constitutionally protected anti-war and civil rights activities, violates their constitutional right guaranteed by the First Amendment to speak freely and to organize and assemble for political purposes, and constitutes a continuing violation of and interference with their rights under the Fourth and Ninth Amendments. Plaintiffs claim that defendants' practices violate 18 U.S.C. § 2510 et seq. (Supp. V, 1965–69) and, insofar as wiretapping prior to June 10, 1968, is concerned, 47 U.S.C. § 605 (1964), as well as 42 U.S.C. § 1983 (1964).

Thereafter, plaintiffs served notices for depositions of defendants and others, interrogatories and requests for admissions. On August 15, 1969, defendants moved to stay all proceedings in this action on the ground that it was initiated to circumvent the rulings limiting pre-trial discovery in the criminal case. They also alleged: "Moreover, necessarily most of the more important factual issues with respect to electronic surveillances in both the criminal case and the subsequently filed civil case are identical."

On December 2, 1969, the District Court entered its stay order. The order recited that the court found that "the issues here and the issues in [the criminal case] are so overlapping, so repeated in one case and in the other, that the interests of justice will best be served by

---

3. The complaint sets forth that for purposes of declaratory and injunctive relief, this is a class action brought pursuant to Fed.R.Civ.P. 23(a), representing "all American citizens who have, do, or intend to advocate ideas, policies, and political positions which are unpopular, controversial, or who otherwise dissent from the ideas, policies, and political positions predominant in American society."

The complaint further alleges: "This class, which includes groups of all political persuasions—radical, liberal and conservative—is so numerous that joinder of all members is impossible."

4. Plaintiff organizations alleged that they "are engaged in activities and share some goals which are similar, at least, to some of those engaged in by Martin Luther King, Jr., and Elijah Muhammad" and "have participated in varying degrees with the individual plaintiffs herein in one or more enterprises."

granting the motion of the defendants." The court ordered that all pending and further proceedings in this civil action be stayed "until ten (10) days after entry by this Court of an order vacating this stay on the motion of any party to this action based on the final termination in the trial and appellate courts, including the United States Supreme Court, of all issues relating to electronic surveillances in the now pending case of United States of America v. David T. Dellinger, et al., Criminal No. 69–180 (U.S.D.C.N.D.Ill., E.D.)." Plaintiffs appealed.[5]

## II. Impropriety of Stay Order Issued by the District Court

This appeal does not present occasion to decide the merits of the civil action brought by plaintiffs or of any defense that may be interposed by the defendants in their answer. We therefore do not consider so much of the Government's brief as contends that plaintiffs' constitutional rights have not been infringed, except to say that the questions raised are not insubstantial. Compare United States v. Smith, 321 F.Supp. 424 (C.D.Cal. Jan. 8, 1971); United States v. Sinclair, 321 F.Supp. 1074 (E.D.Mich. Jan. 26, 1971).

The central question is the propriety of an ongoing order which suspends plaintiffs' action entirely until final completion, including ultimate appellate disposition, of the criminal case pending against some of the plaintiffs.

The District Court's order has operated since inception to stay this civil action by nine organizations who were not defendants in the criminal case, although they are described as having participated in various enterprises with the eight plaintiffs who were criminal defendants.

It further appears that this order has operated since February, 1970, to stay this civil action as to three individual plaintiffs whose connection with the criminal case was ended by the time of verdict.[6] This information is taken into account though relating to matters arising subsequent to the order. Since the information is undisputed there is no occasion to insist on a formal motion to supplement the record. Moreover the possibility of such outcome was or should have been in the contemplation of the District Court when the order was issued.

The Government's motion for stay presented its concern that this civil action represented an effort to circumvent orders in the criminal case which limited pretrial discovery by defendants in the criminal case. The supporting affidavit also pointed out the difficulties involved in duplication of witnesses. It was further alleged: "If the civil case is stayed, these conflicts can be avoided, and it is possible that upon completion of the criminal trial, many of the related issues in the civil case can be stipulated between the parties."

These considerations, it may be assumed, justified an order staying the civil case until completion of the trial of the criminal case. But they present no justification for a stay that (a) is appli-

---

5. The stay order of December 2, 1969, replaced an earlier order, entered August 18, 1969, that stayed all discovery pending determination of the motion for a stay of all proceedings.

   Plaintiffs' appeal first came before us on plaintiffs' Motion for Summary Reversal, filed on April 20, 1970, which was denied by this court on May 27, 1970.

6. On February 18, 1970, two months after the stay order was entered, the jury in the criminal case brought in a verdict acquitting all defendants of conspiracy but convicting five defendants under 18 U.S.C. § 2101 (Supp. V, 1965–69). Two defendants were acquitted entirely. One defendant has been severed from the criminal case by action of the trial judge for reasons unrelated to the merits; the Government has apparently decided not to renew the prosecution of his case. The district judge ruled that the surveillance of the conversations of individual defendants was lawful, though warrantless, and did not infringe their constitutional rights. The judgments entered after the conviction have been appealed.

cable to civil plaintiffs who are not criminal defendants, and (b) persists until completion of all appellate and remand proceedings. The trial phase of the criminal case has come to an end but the appellate and remand phases may go on for years. The case will apparently be argued to the Circuit Court of Appeals for the Seventh Circuit in the spring of 1971. But its subsequent decision may lead to review by the Supreme Court. If there should be a reversal and remand, the time span of the delay and stay embraced by the District Court order may come to embrace a new trial and appeals.

The applicable jurisprudence appears in Landis v. North America Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), which considered an order staying all proceedings in a suit brought by two holding companies to restrain enforcement of the Holding Company Act, pending final (including appellate) disposition of another suit, then pending in another District Court, brought by the SEC to compel enforcement.

Various pronouncements in the *Landis* opinion seem to us pertinent. They are:

■  1.  A court has inherent power to stay proceedings in control of its docket,—after balancing the competing interests.[7]

■  2.  "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." 299 U.S. at 255, 57 S.Ct. at 166.

■  3.  "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." 299 U.S. at 256, 57 S.Ct. at 166. This justified a stay pending the District Court determination in the other suit—in view of the complex facts, and novel legal problems "of far-reaching importance to the parties and the public." *Id.*

4.  "We are satisifed that the limits of a fair discretion are exceeded in so far as the stay is to continue in effect after the decision by the District Court in the suit against the Bond & Share Company, and until the determination by this court of any appeal therefrom. Already the proceedings in the District Court have continued more than a year. With the possibility of an intermediate appeal to the Circuit Court of Appeals, a second year or even more may go by before this court will be able to pass upon the Act." 299 U.S. at 256, 57 S.Ct. at 167.

■  5.  "The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description. When once those limits have been reached, the fetters should fall off. * * * If a second stay is necessary during the course of an appeal, the petitioners must bear the burden, when that stage shall have arrived of making obvious the need." 299 U.S. at 257, 57 S.Ct. at 167.

The vitality of *Landis* is underscored by our recent opinion applying its principle to a case where defendants in a criminal proceeding brought a civil action to restrain infringement of their constitutional rights. McSurely v. McClellan, 138 U.S.App.D.C. 187, 426 F.2d 664 (1970). The case at bar provides additional considerations militating against a protracted total stay in that some of

---

7.  See 299 U.S. at 254–255, 57 S.Ct. at 166: "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."

the plaintiffs being stayed were not parties to the criminal case.

We think it evident from *Landis* that the stay order was immoderate in extent and hence invalid since it prohibited any proceeding or action by plaintiffs who were not defendants in the criminal case beyond the trial stage of the criminal case.

The improvidence of the stay granted relates not only to its duration but to its scope. The order requires a stay of all proceedings. Where related civil and criminal litigations are pending at the same time, sound discretion of the court may require that the civil action not be blocked entirely but be subject to some limitation, including, *e. g.*, protective orders pertinent to discovery, to avoid essential unfairness or other interference with the public interest. United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); Gordon v. Federal Deposit Insurance Corp., 138 U. S.App.D.C. 308, 427 F.2d 578 (1970). We need not consider whether such protective orders would be required in the case at bar, though we feel impelled to interject that plaintiffs' request for oral deposition is subject to restraint on sound principle of equity and public interest when information is sought from those holding high public office. Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F. 2d 561 (1970). But even assuming that some protective orders may come to be appropriate, this does not justify a total stay of proceedings. The proceedings, when resumed, may in fact come to be simplified through the kind of stipulation the Government's motion envisaged.

Any protracted halting or limitation of plaintiffs' right to maintain their case would require not only a showing of "need" 'in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed. This consideration is of particular importance where the claim being stayed involves a not insubstantial claim

of present and continuing infringement of constitutional rights. No such consideration or balancing was provided by the District Court.

The Government's initial request for a stay was to avoid interference with another case—a case of public importance —and this presented strong consideration for stay. The brief to this court goes further and argues to us that the stay pending final appellate disposition of the criminal case was a proper exercise of the trial court's discretion to assure "economy of time for itself, for counsel, and for litigants and to provide proper recognition of actions in coordinate courts." This appeal to "economy," even in the absence of interference with another proceeding, would prove too much. It would support a district court stay of proceedings in a case whenever the same question is involved before another court in litigation not involving the parties protesting the stay. And *Landis* expressly declares that such a result is not proper except in "rare circumstances," and then only if the issue of stay pending the appeal is separately considered after the trial and is then held to be justified on the basis of "obvious need."

It cannot be said to be unseemly or lacking in respect for a court of coordinate jurisdiction, for this court, or the District Court, to take up and decide a question of law that is pending in another circuit. First, this circuit cannot be certain that the other circuit would determine the issue. Thus, the appeal of the Chicago Trial may be disposed of without determination of the issues presented in this civil litigation. Moreover, the other circuit's decision would not be *res judicata*. The action in this circuit is being brought by persons not parties to the other case. As to the point that the question is of a kind that merits Supreme Court consideration, when the question is one of national importance the Supreme Court may well welcome the interim expression of views by more than one circuit. We do not say that the lower courts should reach

out merely to provide a plethora of views, or should fail to explore possibilities of division of labor in the interest of efficiency in judicial administration. However, the addition of another view at the intermediate level on an issue of national consequence and highest significance provides a different focus that is not necessarily an evil but may, on the contrary, serve like a stereopticon to enhance depth perception.

### III. *Appellate Jurisdiction*

We turn to the Government's contention that this court is without appellate jurisdiction of the matter before us. The Government's view, if sound, precludes any appellate rectification of error even where a district court has issued a stay of immoderate scope and duration, in contravention of the principle of *Landis*, and has thereby withheld for a prolonged and indefinite period, any consideration of the claims of plaintiffs seeking injunctive relief that they are presently being denied their constitutional rights. We think this contention is not supported by sound legal reasoning or precedent.

The precedents shape and define more than one road leading to the appellate courts.

a. There are decisions holding that a stay order is appealable because it operates in practical effect as a "final" order. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962);

McSurely v. McClellan, *supra*; Amdur v. Lizars, 372 F.2d 103 (4th Cir. 1967); Glen Oaks Utilities, Inc. v. Houston, 280 F.2d 330 (5th Cir. 1960).

b. There are decisions holding that a stay order is in any event appealable when entered in an action for injunctive relief, as equivalent to a refusal of temporary injunctive relief which is appealable under 28 U.S.C. § 1292.[8] *E. g.* Glen Oaks Utilities, Inc. v. Houston, *supra*; Jewell v. Davies, 192 F.2d 670 (6th Cir. 1951), cert. denied, 343 U.S. 904, 72 S. Ct. 635, 96 L.Ed. 1323 (1952). This was the approach used successfully by the Government in United States v. Lynd, 301 F.2d 818 (5th Cir.), cert. denied, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed. 2d 125 (1962), holding that the action of the trial judge in granting a recess following an injunction hearing was in all respects "refusal" to issue a temporary injunction that was appealable under § 1292.

c. Indeed the fact that plaintiffs here sued for damages would provide a theoretical right of appeal based on historical concepts even assuming that a stay of an equity proceeding is not appealable. *See* Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Travel Consultants, Inc. v. Travel Management Corp., 125 U.S.App.D.C. 108, 367 F.2d 334 (1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967).[9]

d. Finally we note that where a judge abuses his discretion in entering a

---

8. Plaintiffs invoke this rule saying (Br. 9): "The stay of all proceedings for so long a period of time amounts to a denial of an injunction on the merits, since all of plaintiffs' activity during such period for which plaintiffs were planning to seek preliminary, as well as final protection, remains unprotected."

9. The Fifth Circuit's *Glen Oaks* decision suggests that preservation of the historical distinction is unsound and the Supreme Court would overrule *Baltimore Contractors* insofar as it purports to make appealable every stay order in a legal action. As our *Travel Consultants* opinion indicates we have followed the rule of *Baltimore Contractors*, while recognizing that it is anomalous, at least in the absence of a showing of substantial injustice or substantial impairment of judicial administration.

There would remain the question whether the legal damages action was so subordinate as to require that it be overlooked for purposes of denying an interlocutory appeal. Alexander v. Pacific Maritime Ass'n, 332 F.2d 266 (9th Cir.) cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964). This may help avoid disastrous consequences of *Baltimore Contractors* pending Supreme Court reconsideration.

stay order, an appellate court may in any event treat the attempted appeal as an application for mandamus and grant effective relief. International Nickel Co. v. Martin J. Barry, Inc., 204 F.2d 583, 585 (4th Cir. 1953). And we observe that while upholding the stay in Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co., 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952), Mr. Justice Frankfurter pointed out that if a district judge abuses the discretionary authority that must be provided in order to ensure an effective judiciary, "there is always the opportunity for corrective review by a Court of Appeals and ultimately by this Court."

■ Approaching the matter in terms of practical consequences we conclude on balance that the case at bar should be taken as coming to the appellate court not by appeal as of right but by application for a writ under the All Writs Act.[10]

■■ There is logic in the position that a stay of an action for injunctive relief operates as a refusal of a temporary injunction. In some cases the stay may be appealable on that ground, when such a refusal is the essence of what was done by the trial court. Whether that is a sound result depends on a practical assessment of the case. It counts against this conclusion that the court's action did not even imply a preliminary assessment of the merits of the claim for injunctive relief, including the claim of irreparable injury.[11] In the matter brought before us there was neither an express application for a temporary injunction nor consideration in any way of the merits of such an application. Moreover, justification of jurisdiction on this ground might operate to limit unduly the scope of consideration by the appellate court. It may well be that a comparative assessment of the rights invoked by plaintiffs and the public interest invoked by defendants would justify a withholding of relief *pendente lite* but would not justify a deliberate refusal to permit the case to proceed to a determination of the merits. On balance we think it a practical assessment of the circumstances of the case at bar to conclude that the order is not fairly to be taken as appealable as of right as a refusal of temporary injunctive relief.

In some cases a stay order has elements of finality. For example a stay order, to await determination of the issue by a state court where no litigation had even been commenced, was held appealable as a final order since "appellant was effectively out of court." Idlewild Bon Voyage Liquor Corp. v. Epstein, *supra*, 370 U.S. at 715, 82 S.Ct. at 1296. While the stay order before us contemplates a prolonged stay of excessive duration it is not so indefinite as to be the practical equivalent of a dismissal. Any contention that this was a final order because it terminated a right to forthwith consideration[12] manifestly would be too broad since it would admit of appeals of all stay orders. It might also be contended that there was finality in the order perpetuating plaintiffs' injury, through denial of claimed constitutional rights during the litigation, but on analysis that adds little to the contention that a temporary injunction has been refused.

We think the case calls for application of the precedents (see para. d.) permitting consideration of the appeal as an application for a prerogative writ at least where, as here, the claim of appeal-

10. 28 U.S.C. § 1651 (1964).

11. Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (Setting a case for trial on the merits, or rejection of a motion for summary judgment, would not be viewed an an appealable refusal of interlocutory injunctive relief).

12. For the appealability of "collateral orders", see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); C. Wright, Law of Federal Courts § 101 (2d ed. 1970).

ability was not insubstantial. This approach has the advantage of limiting the use of appellate recourse in response to stay orders, yet keeping the door open for the occasional case reflecting abuse of discretionary authority. The factors before us are not unlike those that prompted this court to permit a "special appeal" in the *Landis* case.[13] Such appellate consideration would not "thwart the congressional policy against piecemeal appeals"[14] because plaintiffs' prayer for forthwith consideration of their constitutional claims could obviously not be preserved for presentation on appeal from the ultimate disposition of this litigation in the District Court. In La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) the Court pointed out, in issuing a writ to review an order for appointment of a master, that while it did not "authorize the indiscriminate use of prerogative writs as a means of reviewing interlocutory orders" the writ was appropriate where "supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system" (352 U.S. at 255, 259–260, 77 S.Ct. at 315). The present case requires and warrants such supervisory control.[15]

We see no need for an order either vacating or mandating any action. Instead the case will merely be remanded to the District Court. We may rightfully assume that the court will conduct further proceedings not inconsistent with our opinion.[16]

Remanded.

---

13. 66 App.D.C. 141, 85 F.2d 398, rev'd, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

14. Parr v. United States, 351 U.S. 513, 521, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956).

15. C. Wright, *supra* note 12, § 102, notes that the courts have, following *La Buy*, expanded the supervisory use of the pre-

rogative writs beyond the range theretofore deemed appropriate.

16. Toward that end the plaintiffs may present an appropriate motion to the District Court for modification of its outstanding order. The Government has advised us that if the stay is lifted it has a number of defenses and objections to interpose. These have not been briefed or argued to us and we express no opinion thereon.