No. 81-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

JACK HENRY et al.,

Relator,

vs.

DISTRICT COURT OF THE
SEVENTEENTH JUDICIAL DISTRICT, et al.,

Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relators:

Hoyt and Trieweiler, Great Falls, Montana
John Hoyt argued, Great Falls, Montana
Goetz, Madden & Dunn, Bozeman, Montana

For Respondents:

Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
Montana

---

Submitted: January 11, 1982

Decided: FEB 25 1982

Filed: FEB 25 1982

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is a case involving a petition for a writ of supervisory control and a motion for stay of proceedings. The case initially arose in the District Court of the Seventeenth Judicial District of the State of Montana, in and for the County of Phillips.

A claim was filed in District Court against Burlington Northern, Inc., et al. (hereinafter BN) on June 4, 1979. The claim alleged that BN's negligence at the west Dodson railroad crossing resulted in the injuries sustained by the relator, Jack Henry, and caused the death of his wife, Lorene Henry. There were several alleged "acts" committed by BN that were the bases of the negligence claim. These acts included: permitting hay to be stacked near a crossing; failing to sound a proper warning whistle; and failing to equip its locomotive with an oscillating headlight and a strobe light.

On April 30, 1981, BN filed a motion in limine in the District Court. The motion requested the court to enjoin the relator, his witnesses, and his counsel from mentioning anything about locomotive mounted warning devices, either visual or audible, other than those used on the locomotive in question. The District Court granted the motion, stating:

> "Burlington Northern's only duty in this case with respect to audible and visual warning devices on this locomotive at the time of the accident was to comply with the applicable regulations on the subject. The jury will not be permitted to deliberate on whether Burlington Northern had a duty to equip its engine in accordance with the standard exceeding those set by the regulations.
>
> "The Court finds that the federal government, pursuant to its plenary powers in the field

-2-

of interstate commerce, has seen fit to pre-empt state action in determining the standard of care or duty required of the BN railroad insofar as equipping its railway engines with audible and visual warning devices is concerned."

At the same time the District Court stayed the proceedings to allow the relator to file a writ of supervisory control so that this Court could review the propriety of the District Court's order. This Court issued an order on October 2, 1981, directing BN to respond to the relator's application for the writ of supervisory control.

Shortly thereafter, on October 7, 1981, BN filed a motion for stay of proceedings in this Court pending a decision by the United States Court of Appeals for the Ninth Circuit in the case of Mary Marshall, etc. v. Burlington Northern, Inc., Case No. CA, Docket No. 81-3161. This Court then ordered in pertinent part:

"1. That respondents file their response and brief to relator's application for writ of supervisory control in this Court on or before October 30, 1981.

"2. That relator file his response and brief to respondents' motion to stay proceedings on or before October 30, 1981.

"3. That each party thereafter have to and including November 13, 1981, in which to file reply memoranda to the adverse party's responsive briefs. Relator's reply memorandum shall relate solely to issues raised on his application for supervisory control. Respondents' reply memorandum shall relate solely to issues raised on its motion for stay of proceedings.

"4. The parties shall serve copies of all documents filed upon counsel of record.

"5. All matters now pending in this cause are held in abeyance pending further order of this Court . . ."

As a result of these orders, it is now necessary that this Court address both the motion to stay the proceedings

-3-

and the application for the writ of supervisory control. The relator has raised a further issue regarding the admission of evidence of other accidents. However, this issue was not presented to the District Court for a determination and, therefore, will not be addressed in this instance.

Therefore, the issues presented for review are:

1. Whether federal legislation has preempted the state from imposing a common-law duty on railroad carriers to have additional warning devices mounted on their locomotives?

2. Whether the proceedings in this case should be stayed until the United States Court of Appeals for the Ninth Circuit renders a decision on the issue of preemption?

BN contends that Congress, through the Federal Railway Safety Act, 45 U.S.C. §§421-444, and the Boiler Inspection Act, 45 U.S.C. §22-23, §28-43, has preempted all state standards, statutes and common-law doctrines affecting railroad safety. It contends that the states cannot, without narrow exceptions, interfere with the federal government in the area of interstate commerce. Therefore, BN contends, as the District Court held, that ". . . Burlington Northern's only duty in this case with respect to audible and visual warning devices on this locomotive at the time of the accident was to comply with the applicable federal regulations on the subject," and that "[t]he jury will not be permitted to deliberate on whether Burlington Northern had a duty to equip its engine in accordance with a standard exceeding those set by the regulations."

Respondent's contention and the District Court's ruling are contrary to the case law of Montana. In Runkle

v. Burlington Northern (1980), ___ Mont. ___, 613 P.2d 982, 37 St.Rep. 995, this Court held:

> "Thus it may not be enough for the railroad to protect its crossing with a standard crossbuck, to operate a train within a speed limit or to blow the whistle and ring the bell. The jury is still permitted to determine whether the railroad exercised reasonable care and caution under the circumstances and conditions existing at the time of the accident. Whether a railroad is negligent in a particular manner, such as in failing to provide automatic crossing gates, oscillating headlights, flasher lights, or in failing to reduce its speed is a question of fact for the jury." 613 P.2d at 991. (Emphasis supplied.)

It is clear from the language in Runkle that a jury should be permitted to deliberate on whether BN had a common-law duty to equip its locomotive with various warning devices.

Montana is not the only jurisdiction that has ruled in this manner. The Supreme Court of Arizona held in DeElena v. Southern Pac. Co. (1979), 121 Ariz. 563, 592 P.2d 759:

> ". . . whether a railroad is negligent in a particular manner, such as failing to provide automatic crossing gates, is a question of fact for the jury.
>
> ". . . Ordinarily the issue of the negligence in crossing cases, whether the railroad was negligent in the design and maintenance of the crossing or in the operation of the train, is one of fact as in other negligence cases. (Id. [Peri v. L.A. Junction Ry., 22 Cal.2d] at 120, 137 P.2d 441; Wilkinson v. Southern Pacific Co., 224 Cal.App.2d 478, 487-488, 36 Cal.Rptr. 689). . .
>
> "A railroad company is not necessarily free from negligence, even though it may have literally complied with safety statutes or rules; the circumstances may require it to do more. (Hogue v. Southern Pacific Co., supra, 1 Cal.3d at 258, 81 Cal.Rptr. 765, 460 P.2d 965) . . ." 592 P.2d at 762. (Emphasis supplied.)

Also see, Seaboard Coast Line R. Co. v. Buchman (Fla.App.

1978), 358 So.2d 836.

Respondent's contention that this case involves preemption is misplaced. The doctrine of preemption deals with federal and state relations under the Supremacy Clause of Article XI of the United States Constitution. There is no conflict in this case between a federal statute and a state statute. Further, by allowing a jury to determine if the BN violated its common-law duty, this Court is not implementing its own standard. The Federal Railway Safety Act, 45 U.S.C. §§421-444, provides that engines must be equipped with a headlight which will illuminate a person on the tracks at a distance of 800 feet. No federal enactment governs warning systems on the engines. The proof sought here to be offered by plaintiff relates to warning and not to illumination. We hold Congress has preempted the area of illumination devices but not warning devices.

Respondent has made a motion to stay the proceedings in this Court until the United States Court of Appeals for the Ninth Circuit has rendered a decision in the case of Marshall v. Burlington Northern, Inc., Case No. CA, Docket No. 81-3161. Respondent contends that a stay in these proceedings should be granted because: there is a substantial risk of conflicting decisions between the Ninth Circuit in the Marshall case and our decision in this case; the issue is a federal question which is more appropriately decided by the federal courts; the risk of conflicting decisions will create a dilemma for BN in operating its trains in Montana and other states; and the interests of justice, judicial economy, and good court administration requires this Court to do so.

-6-

The leading case on when a stay of proceedings motion should be granted is Landis v. North American Co. (1936), 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153. The various pronouncements of Landis have been followed and reestablished over the years. The court in Dellinger v. Mitchell (D.C. Cir. 1971), 442 F.2d 782, sets out the important legal considerations, initially brought out in Landis, to follow when determining whether a stay in the proceedings should be utilized. The court stated:

> "1. A court has inherent power to stay proceedings in control of its docket--after balancing the competing interests. [Footnote omitted.]

> "2. 'The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.' 299 U.S. at 255, 57 S.Ct. at 166. [Emphasis added.]

> "3. 'Especially in cases of extraordinary public moment, the individual may be required to submit to delay and not immoderate in extent and not oppressive in its consequences if the public welfare or conveninece will thereby be promoted.' 299 U.S. at 256, 57 S.Ct. at 166." 442 F.2d at 786.

When the analysis from Landis is applied to the facts of the case at bar it becomes evident that the motion to stay the proceedings should not be granted.

First, this Court does not believe that there is a federal preemption question involved in this case; therefore, there is not a substantial risk of conflicting decisions. Second, respondent has not sufficiently demonstrated that, by allowing a jury to deliberate on the question of a common-law duty, a great hardship will befall it. Third,

-7-

respondent has failed to satisfy this Court that the hardship on relator is less burdensome than that on respondent or that "some delay is in his [relator's] own interest." Fourth, and as respondent argues, the granting of a stay rests within the discretion of the court. It is very doubtful that the "judicial economy" of the court will be adversely affected by refusing the respondent's motion.

The petition for a writ of supervisory control is granted pursuant to the rationale set out in this opinion. The motion for stay of proceedings is denied for the reasons discussed above.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices